NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

I. D. LOWE (Trustee for Barber J. Thomas, Richard C. Lydle, and Marilyn K. Lyren), d/b/a Thermo-Rite Mfg. Co., and John E. Lydle and I. D. Lowe (Trustee for Barber J. Thomas, Richard C. Lydle, and Marilyn K. Lyren), d/b/a Ken-Tool Mfg. Co., Respondents.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

I. D. LOWE (Trustee for Barber J. Thomas, Richard C. Lydle, and Marilyn K. Lyren), d/b/a Thermo-Rite Mfg. Co., Respondent.

Nos. 17723, 17724.

United States Court of Appeals
Sixth Circuit.

Jan. 21, 1969.

Laurence J. Hoffman, N. L. R. B., Washington, D. C., Arnold Ordman, Gen-

eral Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Nancy M. Sherman, Marsha Swiss, Attys., N. L. R. B., Washington, D. C., on brief for petitioner.

Roy E. Browne, Akron, Ohio, Hershey, Browne, Wilson, Steel, Cook & Wolfe, Akron, Ohio, on brief for respondents. spondents.

Before O'SULLIVAN, Circuit Judge, CECIL, and McALLISTER, Senior Circuit Judges.

McALLISTER, Senior Circuit Judge.

The National Labor Relations Board here seeks enforcement of two orders in which it found that the Thermo-Rite Manufacturing Company and the Ken-Tool Manufacturing Company constituted a single employer of the employees represented by a union bargaining agent; that the companies above named had interfered with, restrained, and coerced employees in the exercise of their organizational rights; that they had discriminated against certain named employees by discharging them because of their union activities; that they had discharged a foreman for failing to commit unfair labor practices against the employees at the behest of the respondent companies, and that the respondent companies had refused to bargain with the union following its certification—all of the foregoing in violation of Section 8(a) (3) and (1) of the National Labor Relations Act, as amended, (29 U.S.C.A. Secs. 151 et seq.) and 8(a) (5) and (1) of the Act.

An examination of the record is convincing that the Board's decisions and orders, based upon the findings of the trial examiner, are sustained by substantial evidence on the record as a whole. It is, accordingly, unnecessary to recount at length the evidence on this review; but certain instances are to be emphasized.

From the beginning of the union's organizing effort, the general manager of respondent companies had shown concern about general foreman Goudy's failure to discover which employees were carrying on union activities. The general manager had directed Goudy to engage in surveillance of organizing activities by keeping watch on Phil Eiseman's house, located several doors down the street from the plant.

In his campaign of opposition to the union, one of the general manager's principal arguments was that the designation by the Thermo-Rite employees of the union as their representative would be futile, as he would not bargain with it. General foreman Goudy frequently made this argument at the manager's express or implied command on behalf of the respondent companies. Whether Goudy made this argument, found by the Board to be an unfair labor practice, as frequently and as forcefully as the general manager desired, cannot be definitely determined, but the manager's view of the answer to this question must be inferred from his conduct toward Goudy after Thermo-Rite's loss of the election. It has also been found that Goudy was directed to threaten the loss of their employment to the part-time employees and to the girls in the plastics department and mail room.

After the election and certification of the union as bargaining agent, the general manager of both respondent companies came down to the place of business where Goudy was awaiting him after a phone call, and the manager then stated that he had talked with his attorneys and the attorneys had told him they would not take his case for review before the National Labor Relations Board "unless they were convinced that somebody in management had sold him down the river." Mr. Goudy had replied that "that charge was absurd, it wasn't so," and the general manager responded that "I would hate to believe it was."

The foregoing conversations followed several days after the general manager had told foreman Goudy that he had found out that one of the employees had been "trying to start a Union in my plant," and that Mr. Goudy should immediately find out all that he could as to

who else might be trying to start a union. The general manager finally told him that the man who had been trying to start the union was Phil Eiseman. When foreman Goudy asked the general manager what grounds he had to dismiss Eiseman, since Eiseman had been doing extremely well and had recently been given a pay raise, the general manager said that the "time study man" for respondents "would prepare facts that will stick." Later in the afternoon, the time-study man brought the foreman two slips, and told him that there could be no denying the fact that respondents had reasonable grounds for Eiseman's discharge, and "they will stick," using the same expression as the general manager.

Thereafter, the evidence adduced by the Board discloses that suspicious and fishy statements were allegedly procured from some employees to the effect that foreman Goudy had been trying to get the employees to vote for the union; and these claimed statements and Goudy's alleged conduct were the bases for the respondent companies' claim that "somebody in management" had sold the respondents "down the river" to secure the union as bargaining agent. Goudy was discharged after the election and was told by the general manager that he could pick up his final pay check; that he was "in a lot of serious trouble, and would have a long time to think it over." The general manager's statement that his attorneys would not take his case unless it could be shown that someone on the employers' side had "sold them out," explains the manager's delay in discharging Goudy and the respondents' effort, in both the objections filed to the election and in the proceedings in this case, to concoct a story of improper pro-union conduct by Goudy; and that one of the respondents' real reasons for discharging Goudy was for failure or refusal to oppose the union in the manner and to the extent desired by the general manager. The trial examiner found that the entire evidentiary fabric of respondents' contention that Goudy was discharged for assisting the union was "so sleazy and tattered that I reject it as a clumsy concoction, completely unworthy of belief"; and such finding was affirmed by the Board. The substantial evidence on the record as a whole shows that all of the respondents' claims and proof against the discharged employees are equally contrived and spurious.

In consideration of the foregoing, enforcement of the Board's order is granted.